*Formatted for Electronic Distribution*                                                                                                 *Not for Publication*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF VERMONT

_____
In re:
    Robert E. Manchester,                                                             Chapter 7 Case
               Debtor.                                                                               # 10-11539
_____
Richard T. Franco,
               Plaintiff,
    v.                                                                                                      Adversary Proceeding
Robert E. Manchester,                                                                         # 11-01009
               Defendant.
_____

*Appearances:*

        *Jess T. Schwidde, Esq.*                                              *John R. Canney III, Esq.*
        *Rutland, Vermont*                                                          *Rutland, Vermont*
        *For the Plaintiff*                                                              *For the Defendant*

### MEMORANDUM OF DECISION
### DENYING MOST OF THE DEFENDANT'S MOTION PURSUANT TO RULE 12(B)(6),
### DENYING THE DEFENDANT'S MOTION PURSUANT TO RULE 12(E), AND (F),
### AND SUA SPONTE STRIKING PARAGRAPHS 54, 55, AND 56 OF THE COMPLAINT

        On April 14, 2011, Richard T. Franco (the "Plaintiff") initiated this adversary proceeding by filing a complaint against Robert E. Manchester (the "Defendant") seeking a declaration that his debt is excepted from discharge in this case, under 11 U.S.C. § 523(a)(4) and (a)(6) (doc. # 1).[1] On May 18, 2011, the Defendant filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), for a more definite statement pursuant to Rule 12(e), and to strike pursuant to Rule 12(f), as made applicable by Federal Rule of Bankruptcy Procedure 7012 (doc. # 4). The Defendant filed an answer to the complaint on the same date (doc. # 5). The Plaintiff filed a response to the Defendant's motion on June 15, 2011 (doc. # 7), the Defendant filed a reply on June 28, 2011 (doc. # 8), and the Plaintiff filed a sur-reply on July 8, 2011 (doc. # 9).

### JURISDICTION

        This Court has jurisdiction over this adversary proceeding and the instant motion under 28 U.S.C. §§ 1334 and 157, and declares it to be a core proceeding under 28 U.S.C. § 157(b)(2)(I).

---
[1] All statutory citations refer to Title 11 of the United States Code (the "Bankruptcy Code") unless otherwise indicated.

1

## DISCUSSION

The Second Circuit has reviewed the standard one must meet to prevail on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) as follows:

> Generally, '[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.' [Bell Atl. Corp. v.] Twombly, 550 U.S. [544] at 555 (internal quotation marks omitted) (alteration in original) (citations omitted). Instead, '[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).' Id. (citations omitted). What is required are 'enough facts to state a claim to relief that is plausible on its face.' Id. at 570. In the words of the Supreme Court's most recent iteration of this standard, '[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' Ashcroft v. Iqbal,    U.S.   , 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). '[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,' however, dismissal is appropriate. Id. at 1950.

Starr v. Sony BMG Music Entm't, 592 F.3d 314, 321 (2d Cir. 2010).

Section 523(a) of the Bankruptcy Code provides, in relevant part, that:

(a)  A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . .

   (4)  for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny; [or]

. . .

   (6)  for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a)(4), (6).

To have a debt excepted from discharge under § 523(a)(4) for defalcation while acting in a fiduciary capacity, a creditor must show that: (1) the debtor was acting in a fiduciary capacity; and (2) the debtor engaged in conduct that constituted a defalcation while serving in that fiduciary capacity. See Artis v. West (In re West), 339 B.R. 557, 566 (Bankr. E.D.N.Y. 2006) (citing The Andy Warhol Foundation for Visual Arts, Inc. v. Hayes (In re Hayes), 183 F.3d 162 (2d Cir. 1999)). "Generally, a debtor acts in a fiduciary capacity under § 523(a)(4) if he serves under a technical or express trust." Id. (collecting cases); see also Rentrak Corp. v. Ladieu (In re Ladieu), 2011 Bankr. LEXIS 721, at *43–51, 2011 WL 748566, at *15–18 (Bankr. D. Vt. Feb. 24, 2011) (construing whether guaranty in written contract created fiduciary duty). "'Constructive or implied trusts, or any trust where the existence of the trust is created merely on the basis of wrongful conduct (a trust ex maleficio) do not create a fiduciary relationship [under § 523(a)(4)].'" West, 339 B.R. at 566 (quoting Zohlman v. Zoldan, 226 B.R. 767, 772

2

(S.D.N.Y. 1998)). "The fiduciary requirement of § 523(a)(4) may also include relationships in which trust-type relationships are forged under state statutory or common law." Id. The Second Circuit has defined "defalcation" as "requir[ing] a showing of conscious misbehavior or extreme recklessness – a showing akin to the showing required for scienter in the securities law context." Denton v. Hyman (In re Hyman), 502 F.3d 61, 68 (2d Cir. 2007) (citations omitted).

To adjudicate an allegation of "embezzlement" under § 523(a)(4), courts rely on the federal common law definition of the term, which is "the fraudulent appropriation of property by a person to whom such property has been intrusted [sic], or into whose hands it has lawfully come." Cent. Islip Plumbing Supply, Inc. v. Dooley, 2011 U.S. Dist. LEXIS 34187, *19, 2011 WL 1261136, *7 (E.D.N.Y. Mar. 30, 2011) (citation omitted). A creditor must demonstrate the following three elements to have a debt excepted from discharge under § 523(a)(4) for embezzlement:

> (1) property owned by another is rightfully in the possession of debtor; (2) debtor's appropriation of such property to a use other than the use for which the property was entrusted to debtor; and (3) circumstances indicating fraudulent intent.

Id. at *20, 2011 WL 1261136 at *7.

To prevail under § 523(a)(6), a creditor must show that the acts or conduct of the debtor caused a willful and malicious injury. See Kawaauhau v. Geiger, 523 U.S. 57, 63 (1998). As used in § 523(a)(6):

> the word 'willful' indicates 'a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. The injury caused by the debtor must also be malicious, meaning 'wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will.'

Ball v. A.O. Smith Corp., 451 F.3d 66, 69 (2d Cir. 2006) (citations omitted) (emphasis in original). "Malice may be constructive or implied" and "[i]mplied malice may be demonstrated 'by the acts and conduct of the debtor in the context of [the] surrounding circumstances." Navistar Fin Corp. v. Stelluti (In re Stelluti), 94 F.3d 84, 88 (2d Cir. 1996) (citations omitted).

### § 523(a)(4): Defalcation While Acting in a Fiduciary Capacity

The first issue with respect to the Plaintiff's claim based on defalcation while acting in a fiduciary capacity is whether the claim is facially implausible because the Plaintiff failed to plead factual content that would allow the Court to draw the reasonable inference that the Defendant was acting in a fiduciary capacity. See Iqbal, 129 S. Ct. at 1949; see also West, 339 B.R. at 566.

The Plaintiff alleges in his complaint that there are three distinct agreements relating to the salient transactions. The first is the retainer agreement the Plaintiff and his firm entered into with Linda and Alfred Lemieux (the "Clients") on June 12, 2001. In this agreement, the Clients hired the Plaintiff and his firm to investigate and, if warranted, to pursue a medical malpractice claim, and provided that the Plaintiff would receive a 40% contingent fee (doc. # 1, ¶¶ 7–8). The second pertinent agreement is the retainer

3

agreement in which the Clients hired the Defendant, dated December 14, 2001. It provided for a 33 1/3% contingent fee if the case was resolved prior to final trial preparations and for a 40% contingent fee if the case was not concluded until after final trial preparations commenced. This agreement also specified that:

> [The Defendant] may obtain associate counsel as may be needed to best protect the interests of the client, and will work with such counsel to provide assistance to the client as needed in investigation or trial of the Action. [The Defendant] will pay for the services of all counsel out of the 33 1/3%–40% contingent fee, and will do so without any additional attorneys' fees to the client.

(doc. # 1, ¶¶ 17–18). The final critical agreement, according to the Plaintiff, is the oral contract between the Plaintiff and the Defendant which provided for the equal division of the attorneys' fees and reimbursement of expenses in the case (doc. # 1, ¶¶ 47–48).

The Plaintiff alleges that the Defendant received $108,333.33 as attorneys' fees in the Clients' medical malpractice case and that, pursuant to the retainer agreements with the Clients, and the oral fee sharing agreement, the Defendant was required to pay a portion of this fee to the Plaintiff. For purposes of this motion, the Court accepts as true these factual allegations of the complaint (set forth in paragraphs 7, 8, 17, 18, 47, and 48). See Starr, 592 F.3d at 321 (citing Twombly, 550 U.S. at 555). The Plaintiff goes on to allege that the Defendant held the Plaintiff's share of the settlement proceeds in a fiduciary capacity, breached his fiduciary obligation to the Plaintiff by converting the settlement proceeds in his possession to his own exclusive use, and the Defendant's misappropriation of the settlement proceeds in his possession owed to the Plaintiff represents a defalcation while acting in a fiduciary capacity (doc. # 1, ¶¶ 54–56). The Court is not required to accept, and does not accept, as true these allegations (set forth in paragraphs 54, 55, and 56 of the complaint), as they are "legal conclusion[s] couched as [] factual allegation[s]." Iqbal, 129 S. Ct. at 1949–50.

The Plaintiff argues that the fiduciary relationship came into being as a result of the Defendant's fiduciary obligation to the Clients under his retainer agreement to pay the Plaintiff's legal fees from the settlement, of which the Plaintiff is the beneficiary, and that it is this obligation, arising out of the attorney-client relationship, which the Defendant breached by retaining the fees (doc. # 9, p. 3). The Court finds that, although the Plaintiff has pled facts that would allow the Court to reasonably infer that the Plaintiff and the Defendant were each acting in a fiduciary capacity with respect to the Clients, this is insufficient to render facially plausible the Plaintiff's claim that the Defendant was acting in a fiduciary capacity toward the Plaintiff. The Plaintiff alleges that he and the Defendant entered into an oral fee sharing agreement (see doc. # 1, ¶ 48), which gives rise to a reasonable inference of a contractual relationship, but not a fiduciary relationship such as that between an attorney and a client. See Gore v. Kressner (In re Kressner), 206 B.R. 303, 312–13 (Bankr. S.D.N.Y. 1997). The Plaintiff does not allege that he and the Defendant entered into a joint venture or intended to create a trust relationship, rather than

4

a contractual relationship, with each other. See id. at 312. Although the Plaintiff alleges that the Defendant held the settlement proceeds in constructive trust (doc. # 1, ¶ 53), constructive trusts do not create a fiduciary relationship under § 523(a)(4). See West, 339 B.R. at 566; see also Kressner, 206 B.R. at 313–14.

Having found that the Plaintiff's § 523(a)(4) claim based on defalcation while acting in a fiduciary capacity is facially implausible, the Court thus sua sponte strikes paragraphs 54, 55, and 56 of the complaint (doc. # 1, ¶ 54–56) pursuant to Rule 12(f)(1) as immaterial,[2] and therefore grants the Defendant's Rule 12(b)(6) motion to dismiss this portion of the § 523(a)(4) claim.

### § 523(a)(4): Embezzlement

In order for the Plaintiff to survive a Rule 12(b)(6) motion on his claim based on embezzlement, the Plaintiff's complaint must plead factual content that would allow the Court to draw the reasonable inference that: (1) property owned by the Plaintiff was rightfully in the possession of the Defendant; (2) the Defendant appropriated the property to a use other than the use for which the property was entrusted to the Defendant; and (3) there are circumstances indicating fraudulent intent. See Iqbal, 129 S Ct. at 1949; see also Cent. Islip Plumbing Supply. Inc., 2011 U.S. Dist. LEXIS 34187 at *20, 2011 WL 1261136 at *7.

As noted above, the Plaintiff alleges in his complaint that (i) the Defendant's retainer agreement provided that the Defendant could obtain associate counsel to be paid by the Defendant from the contingent fee paid to the Defendant without any additional attorneys' fees to the Clients, (ii) the Defendant received $108,333.33 as attorneys' fees in the case, and (iii) the Plaintiff and the Defendant entered into an oral contract providing for equal division of the attorneys' fees and reimbursement of expenses (see doc. # 1, ¶¶ 17–18, 47–48). The Plaintiff alleges that the Clients' medical malpractice claims, including an anticipated wrongful death claim, were settled for $325,000.00, the Defendant negotiated the settlement with the insurance carrier without consulting with or informing the Plaintiff, and the Defendant withheld the $108,333.33 in attorneys' fees from the total recovery of $325,000.00 received from the insurance carrier (doc. # 1, ¶¶ 24–26). The Plaintiff further alleges that he was entitled to a fee of $54,166.66 and reimbursement of expenses of $272.02, for a total of $54,438.68 that was being held by the Defendant, and that, rather than sending payment in this amount, the Defendant withheld payment and instead sent a letter to the Plaintiff advising him to contact his own malpractice carrier (doc. # 1, ¶¶ 27–28). The Plaintiff alleges that at all material times the Defendant intentionally concealed from the Plaintiff his tactics and strategy of settling the Clients' case solely for its value as a wrongful death

---

[2] Since the Court finds that the Plaintiff's § 523(a)(4) claim based on defalcation is facially implausible because the Plaintiff failed to plead facts that would allow the Court to infer that the Defendant was acting in a fiduciary capacity, the Court need not address whether the record supports an inference that the Defendant engaged in conduct that constitutes a defalcation.

5

case and then pursuing the Plaintiff for malpractice for the balance of its value (doc. # 1, ¶ 30). The Plaintiff alleges that the Defendant has not paid any amount to the Plaintiff for his legal services on behalf of the Clients, and the Plaintiff's share of the settlement proceeds in the Defendant's possession was the property of the Plaintiff (doc. # 1, ¶¶ 43, 57). The Plaintiff further alleges that the Defendant embezzled the Plaintiff's share of the settlement proceeds in the Defendant's possession (doc. # 1, ¶ 58). For purposes of this motion, the Court accepts as true the factual allegations in paragraphs 17, 18, 24, 25, 26, 27, 28, 30, 43, 47, 48, and 57 of the complaint. See Starr, 592 F.3d at 321 (citing Twombly, 550 U.S. at 555). However, the Court is not required to accept as true the allegations in paragraph 58, as it is a "legal conclusion couched as a factual allegation." Iqbal, 129 S. Ct. at 1949–50.

The Court finds that the Plaintiff has pled facts that would allow the Court to reasonably infer that the $54,438.68 in settlement proceeds were the property of the Plaintiff and was rightfully in the possession of the Defendant by virtue of the Defendant's retainer agreement, which provided that the Clients would pay the Defendant a contingent fee and that the Defendant would pay associate counsel from the contingent fee without any additional attorneys' fees to the Clients (see doc. # 1, ¶¶ 17–18, 27, 57). The Court further finds that the Plaintiff has pled facts that would allow the Court to reasonably infer that the Defendant appropriated the property to a use other than the use for which it was entrusted to the Defendant by retaining the $54,438.68 rather than paying the Plaintiff (see doc. # 1, ¶¶ 28, 43). Lastly, the Court finds that the Plaintiff has pled facts that would allow the Court to reasonably infer that there are circumstances indicating fraudulent intent, as the Plaintiff alleges that the Defendant intentionally concealed from the Plaintiff his tactics and strategy of settling the Clients' case solely for its value as a wrongful death case and then pursuing the Plaintiff for malpractice for the balance of its value (see doc. # 1, ¶ 30).

Accordingly, Court finds that portion of the Plaintiff's § 523(a)(4) claim based on embezzlement is facially plausible, and therefore denies the Defendant's Rule 12(b)(6) motion to dismiss this portion of the § 523(a)(4) claim.

### § 523(a)(6): Willful and Malicious Injury

For the Plaintiff to prevail on the Rule 12(b)(6) motion with respect to his § 523(a)(6) claim, the complaint must plead factual content that would allow the Court to draw the reasonable inference that the acts or conduct of the Defendant caused a willful and malicious injury. See Iqbal, 129 S. Ct. at 1949; see also Kawaauhau, 523 U.S. at 63.

As noted above, the Plaintiff alleges in his complaint that, rather than paying over the Plaintiff the $54,438.68 in settlement proceeds that were his property, the Defendant withheld the funds and instead sent the Plaintiff a letter advising him to contact his own malpractice carrier, and further that the Defendant intentionally concealed from the Plaintiff his tactics and strategy of settling the Clients' case

6

solely for its value as a wrongful death case and then pursuing the Plaintiff for malpractice for the balance of their claim (doc. # 1, ¶¶ 27, 28, 30, 43, 64). Specifically, the Plaintiff states that on October 4, 2002, he notified the Defendant of the attorney's lien he was asserting in the settlement proceeds, and that he had a lien against the settlement proceeds (doc. # 1, ¶ 29); that the Defendant willfully and maliciously appropriated the Plaintiff's share of the settlement proceeds in the Clients' medical malpractice case with the specific intent of depriving the Plaintiff of the proceeds and converting them to his own exclusive use (doc. # 1, ¶ 65); and that, as a result of the Defendant's conduct, the Plaintiff was harmed and suffered a loss in the amount of $54,438.68 (doc. # 1, ¶ 66). The Court accepts as true for the purposes of this motion the factual allegations in paragraphs 27, 28, 29, 30, 43, 64, 66, and the portion of paragraph 65 that alleges that the Defendant appropriated the Plaintiff's share of the settlement proceeds in the Clients' medical malpractice case with the specific intent of depriving the Plaintiff of the proceeds and converting them to his own exclusive use. See Starr, 592 F.3d at 321 (citing Twombly, 550 U.S. at 555). However, the Court is not required to accept as true the portion of paragraph 65 that construes the Defendant's appropriation of the Plaintiff's share of the settlement proceeds as "willful[] and malicious[]," as it is a "legal conclusion couched as a factual allegation." Iqbal, 129 S. Ct. at 1949–50.

The Court finds that the Plaintiff has pled facts that would allow the Court to reasonably infer that the acts or conduct caused a willful, i.e., a deliberate or intentional, injury, namely that the Defendant withheld the $54,438.68 in settlement proceeds with the specific intent of depriving the Plaintiff of the proceeds and converting them to his own exclusive use, and the Plaintiff suffered a resulting loss of $54,438.68 (see doc. # 1, ¶¶ 28, 65, 66). See Ball, 451 F.3d at 69. The Court further finds that the Plaintiff has pled facts that would allow the Court to reasonably infer that the injury caused by the Defendant was malicious, i.e., wrongful and without just cause or excuse, to wit, that the settlement proceeds were the Plaintiff's property, the Defendant converted the proceeds to his own exclusive use, and the Defendant intentionally concealed from the Plaintiff his tactics and strategy of settling the Clients' case solely for its value as a wrongful death case and then pursuing the Plaintiff for malpractice for the balance of its value (see doc. # 1, ¶¶ 30, 64, 65). See Ball, 451 F.3d at 69.

Accordingly, the Court finds that the Plaintiff's willful and malicious injury claim is facially plausible, and therefore denies the Defendant's 12(b)(6) motion to dismiss the § 523(a)(6) claim.[3]

---

[3] The Defendant also argues that the Plaintiff's claims must fail because the Plaintiff is barred by the statute of limitations and because the Plaintiff has failed to prove the degree of intent required by § 523(a)(4) and (6) (see doc. # 4-1; doc. # 5). However, these arguments concern the merits of one of the Defendant's affirmative defenses and the Plaintiff's ultimate burden at trial. The Court will not address them as part of the instant motion.

### Request for Rule 12(e) and Rule 12(f) Relief

The Defendant additionally argues that the Plaintiff should be required to file a more definite statement under Federal Rule of Civil Procedure 12(e) with respect to the § 523(a)(4) claim based on embezzlement (doc. # 4-2, p. 5). Rule 12(e) provides, in relevant part, that:

> [a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. **The motion must be made before filing a responsive pleading** and must point out the defects complained of and the details desired.

Fed. R. Civ. P. 12(e) (emphasis added). The Defendant filed an answer to the complaint on May 18, 2011 (doc. # 5). Having filed an answer, the Defendant cannot now claim that the complaint is "so vague or ambiguous" that the Defendant is unable to respond. Fed. R. Civ. P. 12(e); see also Beery v. Hitachi Home Elecs. (Am.), 157 F.R.D. 477, 480 (C.D. Cal. 1993). Consequently, the Defendant's Rule 12(e) motion is denied.

Lastly, the Defendant argues that paragraphs 56 and 58 of the complaint should be stricken pursuant to Rule 12(f) as unsubstantiated allegations that are "immaterial, impertinent, or scandalous" (doc. # 4-2, p. 5). The Court above struck paragraph 56 sua sponte pursuant to Rule 12(f)(1) as immaterial on the basis that the Plaintiff's § 523(a)(4) claim based on defalcation while acting in a fiduciary capacity was facially implausible. Accordingly, the Defendant's motion to strike paragraph 56 of the complaint pursuant to Rule 12(f) is denied as moot.

As noted above, the Plaintiff alleges in paragraph 58 of the complaint that the Defendant embezzled the Plaintiff's share of the settlement proceeds in the Defendant's possession (doc. # 1, ¶ 58). The Court found above that the Plaintiff's § 523(a)(4) claim based on embezzlement was facially plausible, and thus finds that paragraph 58 is not immaterial. The Court further finds that paragraph 58 is not impertinent or scandalous, and therefore denies the Defendant's motion to strike paragraph 58 of the complaint pursuant to Rule 12(f).

### CONCLUSION

For the reasons set forth above, the Court finds that the Plaintiff's § 523(a)(4) claim based on defalcation while acting in a fiduciary capacity is facially implausible, and grants the Defendant's motion as to this portion of the Plaintiff's § 523(a)(4) cause of action in the complaint. As a corollary to this relief, the Court sua sponte strikes paragraphs 54, 55, and 56 of the complaint as immaterial pursuant to Rule 12(f)(1). The Court further finds that the portion of the Plaintiff's § 523(a)(4) claim based on embezzlement and his § 523(a)(6) claim for willful and malicious injury are facially plausible, and denies the Defendant's Rule 12(b)(6) motion to dismiss as to these causes of action. Lastly, the Court denies the Defendant's Rule 12(e) motion for a more definite statement and Rule 12(f) motion to strike.

The Court has considered all of the many arguments the parties made in their papers, and to the extent any argument is not specifically addressed herein it is because the Court has found it to be without merit or to be more properly addressed at a later stage of the litigation in this proceeding.

This memorandum of decision constitutes the Court's findings of fact and conclusions of law.

_____
Colleen A. Brown
United States Bankruptcy Judge

August 12, 2011
Burlington, Vermont

9